Filed 8/22/23  P. v. Deer CA1/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>JANEE NICOLE DEER,<br><br>      Defendant and Appellant. | A164606<br><br>(Sonoma County<br>Super. Ct. No. SCV-728503-1) |

After defendant Janee Nicole Deer pleaded no contest to one count of felony identity theft, the trial court, in August 2020, suspended imposition of sentence and placed her on three years' probation pursuant to former Penal Code section 1203.1.[1]  Defendant repeatedly failed to appear as directed, and her probation was in revoked status for a lengthy period of time.

While her probation was summarily revoked, the Legislature passed Assembly Bill No. 1950 (2019–2020 Reg. Sess.), effective January 1, 2021. This legislation amended section 1203.1 to limit the amount of time a trial court can order probation to a period of time not exceeding two years.  (Stats. 2020, ch. 328, § 2; § 1203.1, subd. (a).)

---

[1]  All further statutory references are to the Penal Code unless otherwise indicated.

1

Defendant was eventually arrested and admitted violating her probation on several occasions. By that time, her probation had been in revoked status for over 14 months. The trial court formally revoked and then reinstated probation with a new termination date in October 2023 to account for the time she had been "in warrant status" and her probation had been summarily revoked.

On appeal, defendant raises one issue—she maintains the October 2023 termination date exceeded the trial court's authority under the amended statute.

We agree with the recent opinion by Division Two of this court in *People v. Ornelas* (2023) 87 Cal.App.5th 1305 (*Ornelas*), which is dispositive, and accordingly affirm.

## BACKGROUND

The Sonoma County District Attorney filed a complaint charging defendant with two counts of felony identity theft (Pen. Code, § 530.5, subds. (a) & (c)(3)) and one count of misdemeanor driving without a valid license (Veh. Code, § 12500, subd. (a)). She pleaded no contest to one count of felony identity theft (Pen. Code, § 530.5, subd. (c)(3)), pursuant to a negotiated disposition, stipulating to a factual basis for the plea. The trial court found defendant knowingly, intelligently, and voluntarily entered her plea, that she was guilty of the felony count, and granted the district attorney's motion to dismiss the remaining counts.

On August 27, 2020, the trial court suspended imposition of sentence and placed defendant on three years' formal probation, which meant that her probation would end on August 27, 2023. Among the various terms and conditions, the court ordered her to complete a 45-day jail term (but

2

authorized work release and other alternatives) and set her "surrender" date as November 6, 2020.

In December 2020, the probation department requested that her probation be summarily revoked for failure "to abstain from the use of controlled substances." (Boldface omitted.) The court did so. The following month, in January 2021, defendant, who was present and in custody, admitted violating her probation in both December 2020 (due to failure to abstain from controlled substances) and January 2021 (due to failure to report to probation and to have a GPS monitor installed). The court found defendant in violation of probation, ordered her released from custody with the understanding she would report to probation immediately for installation of a GPS monitoring device, and set the matter for sentencing in February.

Defendant again failed to appear for her GPS installment appointment, and the probation department again requested that probation be summarily revoked and the court issue a bench warrant. The court did so. Defendant also failed to appear at the February 2021 sentencing hearing, and a previously issued warrant remained in place.[2]

Five months later, in July 2021, after defendant had been cited to appear but failed to do so, the trial court issued another bench warrant. Probation remained summarily revoked. The following month, in August 2021, defendant was arrested out of county, cited, and ordered to appear at a November hearing.

She once again failed to appear in November, and the court issued another bench warrant. Later that same day, defendant appeared, and the court recalled the warrant. Defendant admitted to violating her probation in

_____

[2] It appears the court had also previously issued a warrant for defendant on January 19, 2021, for a probation violation for larceny.

3

October and July 2021, and the court ordered her to enroll in a residential treatment program that day and set a sentencing hearing for the following month. Probation remained summarily revoked.

At the December hearing, defendant again failed to appear, and the court issued another bench warrant. However, the court later stayed the warrant after counsel "represent[ed] defendant is in [the] hospital." The court rescheduled the hearing for January 2022 and ordered defendant to bring "proof of medical condition & hospitalization." This hearing was subsequently continued another month.

At the February 2022 hearing, the court initially stated it would extend probation to May 16, 2024. Defense counsel stated, "This is a three-year max. . . . [¶] . . . [¶] I don't have the file in front of me. I think that's beyond two years, and our office has a position under [Assembly Bill No.] 1950, the max would be two years." The district attorney asserted the date should be to October 22, 2023, because defendant "was in warrant status time." The court reinstated probation and extended it until October 22, 2023, stating "If that needs to be litigated, it can be litigated. I know that's an issue in this department."[3]

## DISCUSSION

In August 2020, when the trial court originally placed defendant on three years' probation, former section 1203.1 authorized the court to impose felony probation for up to five years. (§ 1203.1, former subd. (a).) However,

---

[3] It appears the court arrived at the October 22, 2023, date by determining the new two-year termination date (August 27, 2022) and adding the period of time defendant's probation had been summarily revoked—421 days (the court summarily revoked probation on December 22, 2020, and reinstated probation on February 16, 2022). Defendant does not claim the trial court made a numerical error.

4

during the period of time defendant's probation was summarily revoked, the Legislature amended section 1203.1, effective January 1, 2021 (Assem. Bill No. 1950 (2019–2020 Reg. Sess.)), to limit the maximum probation term a trial court is authorized to impose for most felony offenses to two years. (§ 1203.1, subd. (a); Sen. Com. on Public Safety, Assem. Bill No. 1950 (2019–2020 Reg. Sess.) June 10, 2020, p. 2.)

Neither party disagrees as to the retroactive application of Assembly Bill No. 1950 (2019–2020 Reg. Sess.) or that it shortens defendant's probation from three years to two years. Rather, the parties disagree on whether the trial court was authorized to extend defendant's probationary period to account for the time her probation was in warrant status.[4]

Section 1203.1, which limits defendant's probationary period to two years, states in pertinent part, "The court, or judge thereof, in the order granting probation, may suspend the imposing or the execution of the sentence and may direct that the suspension may continue for a period of time not exceeding two years, and upon those terms and conditions as it shall determine. The court, or judge thereof, in the order granting probation and as a condition thereof, may imprison the defendant in a county jail for a period not exceeding the maximum time fixed by law in the case." (§ 1203.1, subd. (a).) Thus, as defendant points out, nothing in the language of section 1203.1, itself, indicates that a sentencing court can reinstate probation and set a new termination date that takes into account the period of time a defendant was in "warrant status."

---

[4] We review the issue of whether the trial court had statutory authorization to extend defendant's probation de novo. (*Ornelas, supra,* 87 Cal.App.5th at p. 1311.)

However, Division Two of this court recently addressed this precise issue in *Ornelas* and concluded section 1203.2, titled "Revocation of probation upon rearrest; Modification of probation pursuant to noticed motion; Pronouncement of judgment; Setting aside order revoking probation," grants a sentencing court the authority to do so.  Specifically, "[u]nder section 1203.2, subdivision (b)(1), the trial court may 'modify' an order of probation upon appropriate notice to the probationer" and the "power to modify includes the power to extend the term of probation, up to the statutory maximum.  (*People v. Cookson* (1991) 54 Cal.3d 1091, 1094–1095. . . .)"  (*Ornelas, supra,* 87 Cal.App.5th at p. 1310.)

*Ornelas* observed that section 1203.2, subdivision (a) empowers a sentencing court to summarily revoke probation and issue a warrant for an absconding probationer and further provides that " '[t]he revocation, summary or otherwise, shall serve to toll the running of the period of supervision.' "  (*Ornelas, supra*, 87 Cal.App.5th at p. 1310.)  However, our Supreme Court "has held that this so-called 'tolling provision . . . focuse[s] on preserving jurisdiction,' giving a trial court 'authority to adjudicate a claim that the defendant violated a condition of probation during the probationary period' even if a formal violation hearing cannot be held before probation expires. (*People v. Leiva* (2013) 56 Cal.4th 498, 514–515 . . . (*Leiva*).)"  (*Ibid.*)  "The tolling provision does not 'stop' probation so as to relieve the defendant from complying with the conditions imposed by the court [citation], nor does it operate to automatically 'extend' the conditions of probation beyond the expiration of the probationary term.  [Citation.]  Instead, where a formal violation hearing is held after the original probationary term has expired, section 1203.2, subdivision (a), preserves jurisdiction so that 'a trial court can find a violation of probation and then reinstate and extend the terms of

6

probation "if, and only if, probation is reinstated based upon a violation that occurred during the unextended period of probation." ' " (*Id*. at pp. 1310–1311.)

As in *Ornelas,* there is no issue here of "preserving jurisdiction to adjudicate a probation violation" because defendant's violation hearing was held prior to the expiration of her original probation term. (*Ornelas, supra,* 87 Cal.App.5th at p. 1311.)

"But apart from preserving jurisdiction, courts have concluded that, pursuant to section 1203.2, when probation has been summarily revoked and when, at a hearing held during the initial period of probation, a violation has been found, 'the period of tolling can be tacked onto the probationary period if probation is reinstated.' " (*Ornelas, supra,* 87 Cal.App.5th at p. 1311, quoting *People v. Tapia* (2001) 91 Cal.App.4th 738, 741, disapproved on another ground in *People v. Wagner* (2009) 45 Cal.4th 1039, 1061, fn. 10.) *Ornelas* cited to *People v. Jackson* (2005) 134 Cal.App.4th 929 (*Jackson*) as an example.

In *Jackson*, *supra*, 134 Cal.App.4th 929, the defendant pled guilty in August 1996 and the court imposed a probationary term of five years, the maximum term under section 1203.1, subdivision (a), at the time. (*Jackson,* at p. 931.) Jackson's term was therefore scheduled to expire in August 2001. (*Id.* at p. 932.) In March 1999, Jackson's probation was summarily revoked for desertion. (*Id.* at p. 931.) In November 1999, Jackson admitted she had violated probation, and the trial court found her in violation and reinstated her probation. (*Ibid.*) But the trial court imposed a new five-year probationary term and extended the probation to November 2004, which the Court of Appeal concluded was error. (*Ibid.*) Upon reinstating probation in November 1999, the trial court was "free to recalculate the date of expiration

of [defendant's] probationary term," such that the term would expire in May 2002, 263 days after the original expiration date, to account for the 263 days during which her probationary period had been tolled by the revocation of her probation under section 1203.2, subdivision (a). (*Jackson,* at p. 932.) But the trial court had no authority to extend her probation to November 2004, which, by imposing a new five-year term on top of the probationary period that ran from August 1996 to March 1999, resulted in a term that exceeded the statutory five-year maximum. (*Ibid.*)

*Ornelas* went on to point out that "[i]n 2020, when the Legislature passed Assembly Bill No. 1950 . . . , which reduced the maximum term of felony probation to two years, the question arose whether limiting probation to two years (subject to exceptions not present here) would interfere with the policy goals of probation. The Legislature recognized that the revocation of probation could result in extension to allow two full years of supervision, as reflected in this excerpt from an analysis of the proposed law by the Assembly Committee on Public Safety: 'Is . . . two years a sufficient amount of time to meet the objectives of probation? . . . [¶] Probation supervision can serve to connect defendants to community based organizations and resources which can provide support and assistance. Probation can help defendants connect to resources to assist with needs like housing and job training. [¶] A two year period of supervision would likely provide a length of time that would be sufficient for a probationer to complete any counseling or treatment that is directed by a sentencing court. To the extent that a probationer is not complying with the treatment or counseling directed by the court during a probationary period, the court can revoke the defendants' probation until the defendant is back in compliance. The period while probation is revoked tolls the running of time towards the end point of the probationary period. That

tolling process would effectively extend the probationary period for individuals that are not in compliance with the conditions of their probation.' (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1950 (2019–2020 Reg. Sess.) as amended May 6, 2020, p. 6.)" (*Ornelas, supra*, 87 Cal.App.5th at p. 1313.)

"Accordingly, in passing Assembly Bill [No.] 1950, the Legislature intended that when a warrant was issued and probation was revoked during the initial two-year term, if probation was later reinstated, the period during which the defendant was on warrant status could be tacked on to the probationary period. Notably, summary revocation does not *automatically* extend the probationary period. Rather, at a formal revocation hearing, if the trial court finds a violation, it has discretion to reinstate and extend the probationary term to account for the period of revocation." (*Ornelas, supra*, 87 Cal.App.5th at p. 1313.)

Defendant here, as did the defendant in *Ornelas*, maintains *Leiva* actually dictates that her time on warrant status cannot extend her probation termination date. But, as *Ornelas* explains, "*Leiva* addressed a situation different from Ornelas's. The question in *Leiva* was 'whether, once probation has been summarily revoked, [the tolling provision in section 1203.2, subdivision (a)] permits a trial court to find a violation of probation and then reinstate or terminate probation *based solely on conduct that occurred after the court-imposed period of probation had elapsed*.' (*Leiva, supra*, 56 Cal.4th at p. 502, some italics added.) The answer was 'no': the 'tolling provision preserves the trial court's authority to adjudicate, in a subsequent formal probation violation hearing, whether the probationer violated probation during, but not after, the court-imposed probationary period.' (*Ibid.*) But *Leiva* does not prevent the trial court from exercising its discretion to tack on

9

additional days for the period of revocation in Ornelas's case. To the contrary, under *Leiva*, '[i]f a defendant whose probation has been summarily revoked has violated probation during the original probationary period,' as Ornelas did here, the defendant 'may be subject to an additional period whenever a formal probation revocation hearing can be held.' (*Id.* at p. 517.)" (*Ornelas, supra,* 87 Cal.App.5th at p. 1315.)

Defendant also points to a footnote in *Leiva* in which the high court disapproved *People v. DePaul* (1982) 137 Cal.App.3d 409. (*Leiva, supra,* 56 Cal.4th at p. 518, fn. 7.) In *DePaul*, the trial court placed the defendant on two years' probation. After the probation term expired, the probation department petitioned to revoke probation. The court found the defendant had violated his probation by committing two new offenses *after* the probation term had expired and sentenced defendant to prison. (*DePaul*, at pp. 411–412.) On appeal, the defendant contended the trial court lacked jurisdiction to revoke his probation after the probationary period had ended. (*Id.* at p. 412.) The Court of Appeal held use of the word "toll" in section 1203.2 meant "that a revocation of probation suspends the running of the probationary period and if probation is reinstated the period of revocation cannot be counted in calculating the expiration date." (*DePaul,* at p. 415.) The court in *Leiva* disapproved this conclusion, and in doing so, noted "our conclusion is fair to the prosecution because, upon proof that a defendant did violate probation before the expiration of the probationary period, probation may be reinstated or a new term may be granted. (§§ 1203.2, subd. (e), 1203.3.)" (*Leiva,* at p. 518, fn. 7.)

In *People v. Johnson* (2018) 29 Cal.App.5th 1041, Division Two of this Court read this footnote to mean the period of supervision "is not *automatically* extended" due to a period of revocation (*id.* at p. 1049, italics

10

added) and explained that "a reasonable reading of *Leiva* compels the conclusion that the length of the supervisory period is not *automatically* extended when PRCS [postrelease community supervision] is reinstituted after revocation, *although a trial court may choose to extend the original expiration date for PRCS within the maximum statutory period.*" (*Id.* at p. 1050, italics added.) Similarly, Division Five of this court, in *People v. Braud* (2020) 56 Cal.App.5th 962 (*Braud*) stated, "Although tolling for a summary revocation does not *automatically* extend a probation period, when a court reaches the second step of the revocation process—the formal hearing on the violation—*Leiva* says the court may choose to extend the probation period. . . . In short, when the violation and reinstatement both occur during the probationary period, *Leiva* indicates a court may extend it by adding the tolled period of revocation." (*Id.* at pp. 968–969.)

Defendant contends the analysis in *Braud*, which dealt with postrelease community supervision, is "inapplicable in the probation context," asserting that "in contrast to the statutory scheme for probation, in the context of [community supervision], the Legislature has expressly carved out an exception allowing the extension of a supervisee's [community supervision] beyond three years" pursuant to section 3456, subdivision (b). She maintains since there is no similar provision for probation it "should be presumed . . . the Legislature therefore intentionally limited the authority of a court to extend probation." This argument was also rejected in *Ornelas*— "[t]he absence of a statutory prohibition against counting absconded time toward probation does not require us to infer a *requirement* that absconded time be counted toward probation." (*Ornelas, supra*, 87 Cal.App.5th at p. 1315.) Furthermore, as we have recited, the legislative history of the bill shortening felony probation reflects that the Legislature understood the

11

language of section 1203.2 and the case law construing it as sufficient to provide the same authority with respect to probation.

Defendant also suggests language in *People v. Gilchrist* (1982) 133 Cal.App.3d 38 and *People v. Cookson, supra*, 54 Cal.3d 1091, supports her assertion that the "case law interpreting [section 1203.1], dictate[s] that the time spent in revoked status counts against the section 1203.1 statutory maximum term of probation." She points to the Court of Appeal's statement in *Gilchrist* that, "If defendant's period of probation was five years' maximum, any attempt by the Los Angeles court to extend probation beyond that period would be null and void even had he consented." (*Gilchrist, supra*, 133 Cal.App.3d at p. 44.) She also points to a footnote in *Cookson*, in which our Supreme Court stated, "Because the maximum term of incarceration that defendant could have suffered was less than five years (§ 484b), probation could not extend past [the then-statutory maximum of] five years (§ 1203.1)." (*Cookson, supra*, 54 Cal.3d at p. 1094, fn. 2.) Both cases are inapposite. *Gilchrist* addressed "whether the law requires a retroactive application of the maximum period of probation under the determinate sentence law (DSL) to persons who were placed on probation prior to the effective date of that law." (*Gilchrist*, at p. 41.) *Cookson* addressed the trial court's authority to extend probation for two years, but still within the then-statutory maximum of five years, to ensure restitution would be made. (*Cookson,* at p. 1093.) Neither case dealt with the issue at hand—whether time spent in revocation counts toward the statutory maximum.

*Ornelas* also observes that the "leading treatise on California criminal sentencing supports our conclusion that the trial court did not err in extending [defendant's] probation: '[T]here is a limited right to extend probation to account for the period when defendant's probation has been

summarily revoked.' (Couzens et al., Sentencing Cal. Crimes (The Rutter Group 2022) ¶ 8:22 (Couzens).) The limitation is that 'the total term of active probation . . . must not exceed the limits set by AB 1950,' " which for defendant, is two years. (*Ornelas, supra*, 87 Cal.App.5th at p. 1314, quoting Couzens, at p. 272; *Aixtron, Inc. v. Veeco Instruments Inc.* (2020) 52 Cal.App.5th 360, 400 [although secondary sources are not "compelling authority, they may be persuasive"].)[5]

In sum, we agree with the thorough analysis set forth in *Ornelas*.[6]

---

[5] In fact, this treatise details the exact scenario presented here, where a trial court sentences a defendant—before the effective date of Assembly Bill No. 1950 (prior to January 1, 2021)—to three years' probation. After a year, the defendant violates probation, the court issues and warrant and orders probation summarily revoked. During this time period, Assembly Bill No. 1950 takes effect. The warrant is then executed six months later (after January 1, 2021). The authors state, "At sentencing on the violation, the court could reinstate the defendant on the remaining period of probation and exercise its discretion to extend the probationary term for the period defendant was in warrant status, but the total term on active probation is limited to a maximum of two years (six months more) in order to comply with AB 1950. Alternatively, the court could order the six months during which the defendant was in warrant status does not apply against the remaining probation term—in this way the defendant will have a full year of active supervision remaining on his reinstated probation. Such an order has the effect of 'extending' the term of probation to account for the time lost while the defendant was in warrant status, but the total length of active probation has been adjusted to meet the limits set by AB 1950." (Couzens, Sentencing Cal. Crimes, *supra*, ¶ 8:21, at pp. 269–270; see Witkin, Cal. Criminal Law (2023 supp.) § 687, p. 478 ["the trial court may reinstate and extend the terms of probation, but only if the reinstatement is based on a violation that occurred *during* the original period of probation"].)

[6] After oral argument we granted defendant's request to file a supplemental letter brief addressing issues discussed during argument and also allowed the Attorney General to file a responding letter brief, which he did. Having considered the points made in this briefing, we remain of the view that *Ornelas* appropriately resolves the issues before us.

13

**DISPOSITION**

The order is AFFIRMED.

_____
Banke, J.

We concur:


_____
Humes, P.J.


_____
Margulies, J.


A164606, People v. Deer